Filed Feb. 2, 1884.

---

No. 10,642.

FARMER ET AL. *v.* FARMER, ADMINISTRATOR.

WILL.—*Widow.*—*Estate for Life.*—*Power of Distribution.*—*Advancement.*—The will of a testator, who devised all his property, both real and personal, to his wife during life, and directed at her death that it should be equally divided between his four children, contained a clause authorizing the wife to divide such property, or any portion of it, between said children during her life.

*Held,* that this clause did not authorize the wife to advance to one of the children $2,000 in money without any division among the other children, and thereby divest the title of the others to such money.

SAME.—*Decedents' Estates.*—*Special Finding.*—In an action by such children against the mother's estate to recover such money, a general verdict in

Farmer *et al. v.* Farmer, Administrator.

their favor was not controlled by answers of the jury to interrogatories, that the mother had advanced the identical $2,000 to one of the children, as it was not found that the others consented to such advancement, and hence the court erred in rendering judgment against them upon such answers.

SAME.—*Heirs.*—*Parties.*—Such an action is not joint, but may be maintained by one, or any number, and hence a defence as to one will not defeat the action as to all.

SAME.—*Administrator.*—*Estoppel.*—The administrator of the mother's estate, in a former action brought by the children to recover a large sum received by her from the personal estate, having obtained a credit for the $2,000 advanced to one of the children, is in this action estopped to say that such sum was so advanced.

SAME.—*Appeal.*—The children were not compelled to appeal from the order allowing the credit upon their claim for the personalty, but they may acquiesce in such order, and maintain this action to recover the money received from the land.

From the Gibson Circuit Court.

*R. M. J. Miller, J. D. Skelton* and *C. A. Buskirk,* for appellants.

*J. E. McCullough* and *W. M. Land,* for appellee.

BEST, C.—The appellants, Washington W. Farmer, Ezekiel S. Farmer, Estelle F. Taylor and Cornelia P. Davis, filed a claim against the estate of Louvincy Farmer, deceased.

In their statement they averred, in substance, that their father, Fleming Farmer, who was the husband of said decedent, died testate, on the 23d day of June, 1867, the owner of a large amount of real and personal property; that by his will he devised all his real estate, and bequeathed all his personal property, to said decedent during her life, and at her death it was to be equally divided between these appellants; that thereafter said will was duly admitted to probate, and said decedent elected to take under said will, and did take, hold and enjoy all of said property during her life, except a quarter section of land which she and the appellants, on the 20th of November, 1869, sold and conveyed to one Ramsey for $8,000; that to secure such purchase-money said Ramsey made his notes, secured by a mortgage upon said land, to said

Farmer *et al. v.* Farmer, Administrator.

decedent and these appellants, and thereafter paid said decedent upon said mortgage $2,000; that subsequently said Ramsey sold said land to one Kell, who made his note to the decedent for $500, and assigned the notes of one Broomfield to her in payment of the balance of said mortgage; that said decedent received said $2,000 to her own use, and the same has never been accounted for, but remains due and unpaid.

A copy of the will accompanied this statement. By the first clause $500 is bequeathed to Marinda A. Vickers, a daughter, and by the second $500 is given to William Farmer, a son, to whom eighty acres of land had already been given. The third clause, upon which the rights of these parties depend, is in these words:

"All the rest, residue and remainder of all my estate, both real and personal, I give, devise and bequeath to my beloved wife, Louvincy Farmer, for her sole use and benefit during her natural life, and at her death the same shall be equally divided between my children, Ezekiel S. Farmer, Estelle F. Farmer, Washington W. Farmer and Cornelia P. Davis. * * * And the further privilege is accorded to my said wife, if she should choose to do so, to divide all of said property, or such part as she may choose, between the said children, during her lifetime."

As one of the appellants was the administrator, the court appointed the attorneys of the appellee to represent the estate, and they filed an answer in denial. The issues were tried by a jury, and they returned a general verdict for the appellants for $2,000. They also returned interrogatories and their answers, in these words:

" 1st. Did not Louvincy Farmer, in her lifetime, receive from John Ramsey for the sale of the land described in plaintiffs' claim the sum of two thousand dollars in money? Answer. Yes.

" 2d. Did said Louvincy Farmer pay out for and advance to Washington W. Farmer, by the way of purchasing a farm for him, the sum of two thousand dollars? Ans. Yes.

"3d. If you answer interrogatory number two in the affirmative, then did not the defendant set up the same two thousand dollars as a defence in the former action between these parties, and obtain credit for the same in that action? Ans. No.

" 4th. Did the said Louvincy Farmer purchase a farm for Washington W. Farmer, and pay for the same with the same two thousand dollars she received from Ramsey for the land sold to him? Ans. Yes."

Upon the return of the verdict the appellee moved the court for judgment upon the answers to these interrogatories. The motion was sustained, and final judgment was thus rendered. Thereupon the appellants moved for a new trial; this motion was overruled, and these rulings are assigned as error.

The first question presented is whether the court erred in rendering judgment for the appellee upon the answers of the jury to the interrogatories. This depends upon whether or not the special findings are so inconsistent with the general verdict that the latter can not stand. Where special findings are so inconsistent with the general verdict that both can not stand, the former must prevail, but where they may be reconciled upon any reasonable hypothesis, the general verdict will control, and judgment must be rendered accordingly. This has been decided so often, and the rule is so familiar, that authorities need not be cited to support it. The only findings said to be inconsistent with the general verdict are the second and fourth. These find that the decedent advanced the money in dispute to one of the appellants by purchasing a farm with it for him. This was an answer to his claim for the money, but was it any answer to the claim of the others. All sued, it is true, but not upon a joint claim. Their interests are several, and each, all or any number may sue. Any one or more may recover, and the fact that one can not maintain the action does not preclude the others from recovering their interests, though all have united in the suit. *Floyd* v. *Floyd,* 90 Ind. 130.

The fact that all have united in the suit can not, therefore,

aid the findings. These must answer the claim of the other appellants in order to control the general verdict. The mere advancement of the money does not do this unless it was done by their consent, unless the decedent had authority to make the advancement without their consent. The fact of consent is not found, and is therefore wanting. The authority, if any, to make the advancement was conferred by the will, and this is precisely what the appellee claims.

This authority, if it existed, is found in the last clause of the 3d section, which authorized the decedent, during life, if she chose, to divide the property, or any portion of it, between the appellants. This manifestly means that if she should determine not to keep the whole or any portion of the property during life, she might divide the same or such portion between the appellants. This clause did not, as we think, authorize her to advance such portion of the property as she did not choose to keep to one in exclusion of the others. An equal division was required, whether made before or after her death, and whether a portion or the whole was divided. An unequal division was not authorized, nor could she set apart a portion of the common property to one without any division, and thus divest the title of the others to such portion. Had she set apart an equal portion of this land to one and kept the rest during life, would the other appellants be bound by such allotment? Would not all the property then at her death have been subject to division? If not, it would follow that the title of some of them to the common property might be divested without their consent and without any division. They would also be compelled to await for their shares the final division of a part of the common property, and, as this part, within the meantime, if real, may have greatly depreciated in value, and, if personal, as in this case, may have been entirely squandered, an unequal division could not be avoided, and thus great injustice might be done. These consequences forbid a construction that renders them possible, and we, therefore, think that the

decedent had no authority, without a division, to advance a portion of the common property to one of the appellants and thereby divest the title of the others. The fact that the land was converted into personalty makes no difference, as the parties' rights in the proceeds are the same as in the land itself; nor does the fact that the advancement was made to one of the appellants, for, if made without authority, it no more divests the title of the other appellants than though it had been made to a stranger. As the decedent had no authority to make the advancement and thus bind the other appellants, these findings did not control the general verdict, and therefore the court erred in rendering judgment against the appellants.

The conclusion reached upon this question would seem to render it unnecessary to notice the motion for a new trial, but as the case must be reversed, and in view of the peculiar condition of the record a new trial must be granted, there is a question that will necessarily arise upon such trial, and, as both parties have discussed it, we will now pass upon it. This question arises upon the following facts: The decedent, upon the settlement of the testator's estate, received $4,742.50 in personalty, and thereafter she and the appellants sold the farm for $8,000 to one Ramsey who made a mortgage to secure its payment. Afterwards he paid the decedent upon the mortgage $2,000, and she invested it in land for Washington W., one of the appellants. Ramsey then sold the land to one Kell who assumed to pay the mortgage, and who did pay it by making his note to the decedent for $500, and by procuring one Broomfield, his debtor, to make her a mortgage upon another piece of land for $5,500. This mortgage she held for some time, when Broomfield conveyed the land in payment of the mortgage. What became of the land, or what disposition, if any, was made of appellants' claim to the $5,500, does not appear. After the decedent's death the administrator of her estate collected the $500 from Kell, and appellants then brought an action to recover such sum and the

Farmer *et al. v.* Farmer, Administrator.

$4,742.50 arising from the personal estate. This case was referred, and the referee found that the estate was thus indebted. He also found that the decedent, as widow of the testator, was entitled to $300; that "during her lifetime she divided and advanced to the claimants to the amount of $4,000," and gave appellants judgment for the balance, viz., $942.50. Thereupon the appellants brought this action, and they insist that the $2,000 advanced to Washington W. constituted one-half of the $4,000 deducted by the referee, and as the estate was thus reimbursed for such advancement the appellants can recover the $2,000 received upon the mortgage. This the appellee denies, insisting that the advancement extinguished the claim, and, though the same was deducted by the referee and the estate got the benefit of it, still the deduction can not create a cause of action against the estate.

Assuming that this sum was deducted by the referee, we think the action well brought. The case made shows that the decedent was indebted to the appellants in the sum of $2,000; that she paid it to one of them, and afterwards, when her estate is sued upon another claim, her administrator obtains a credit upon such claim for the amount of such payment, and now, upon the plainest principles of equity and good conscience, her administrator is estopped in this action to say that any such payment was ever made. The administrator could not have obtained credit upon the other claim without assuming the position that the money paid to Ezekiel was either advanced to him on account of the personalty or generally, and, since this was done and the credit obtained, a court of equity will not now permit him to shift positions and say it was advanced in payment of this claim. Such antagonistic positions can not be taken. To permit it would enable the appellee to receive credit for the same money twice. Having recovered it once, it would be inequitable to take it again. Herman Estoppel, 176.

Nor will it do to say that the credit was wrong, and the remedy was by appeal. The appellants were not compelled

to pursue that remedy. The appellee having successfully assumed the position that the money advanced to Washington was properly applicable to appellants' other claim, he thereby established the fact that it is not applicable to this one, and the appellants, therefore, had the right to take him at his word, and treat this claim as unpaid. Having done so, the appellee is estopped to say that this claim was paid by such advancement though made with the consent of all the appellants.

The appellee being estopped to assert such payment, this action is well brought by all the appellants, as in the absence of such defence each is entitled to recover; in other words, if the money paid to Washington was refunded by the deduction made from the other claim, then this claim has not been paid, and as it belongs to all, the action may be maintained by all.

This much has been said upon the assumption that the credit was obtained. This the appellee does not deny, and two of the jurors swear that the jury intended thus to find; but, nevertheless, the fact is found the other way. This, with the general verdict for the appellants, renders the case peculiar. If the credit was not obtained, and appellants consented to the advancement to Washington (a point upon which the record is silent), then the judgment is right, though the special findings will not support it. If, on the other hand, the credit was obtained, or the advancement to Washington was made without the appellants' consent, the judgment is wrong, and the general verdict is right. In this condition of the record we can not say that a judgment upon the general verdict will not do injustice to the appellee, and as the present judgment can not stand, we think a new trial should be granted generally.

PER CURIAM.—It is therefore ordered that the judgment be reversed, at the appellee's costs, with instructions to grant a new trial.

Filed Jan. 30, 1884.